WEBSTER WOODBURY *vs.* MAINE CENTRAL RAILROAD COMPANY.

Hancock.   Opinion February 3, 1913.

*Contributory Negligence. Motion. Negligence. Ordinary Care. Passageway.*
*Passengers.   Reasonably Safe.   Unobstructed View.*

1   A railroad company is bound to use reasonable care to maintain the passageways to its trains in such a reasonably safe and suitable condition that passengers who are themselves in the exercise of ordinary care can walk over them safely.   This is the extent of its duty.

On motion for new trial by defendant.   Sustained.

This is an action on the case to recover damages for personal injuries occasioned by the alleged negligence of the defendant.   The plaintiff claims that he was injured while walking along the passageway leading from the train shed to the street in the Union Station in Bangor, on the 6th day of June, 1912.   Plea, the general issue.   The jury returned a verdict for the plaintiff for $400.61.   The defendant filed a general motion for a new trial.

The case is stated in the opinion.

*Daniel E. Hurley,* for plaintiff.

*Hale & Hamlin,* for defendant.

SITTING:   WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, BIRD, HANSON, JJ.

SAVAGE, J.   Action on the case for negligence.   The verdict was for the plaintiff, and the case comes up on the defendant's motion for a new trial.

As to most of the facts there is little dispute.   The accident occurred June 6, 1912, in the concourse or passageway leading from the train shed to the street in the Bangor Union Station.   The passageway runs northerly and southerly.   It is about one hundred feet long and twenty-five feet wide.   A permanent fence is on the easterly side and the station building on the westerly.   The flooring of the passageway consists of concrete blocks, practically five feet

square.   One tier of these blocks, five in number, from the fence
to the station building had become out of repair.   This tier was
about twenty or twenty-five feet from the street curb.   At the trial,
for convenience, the blocks were spoken of by numbers, number 1
being on the east, or next to the fence, number 2 next westerly, and
so on to number 5, which was next to the station building on the
west.   On the day preceding the accident, workmen dug out blocks
1 and 2, and filled the empty space with fresh concrete, for new
blocks.   During the progress of the work, and during the night
following, the area of blocks 1 and 2 was surrounded by a fence
three or four feet high, with two boards on each, and board uprights
at the corners.   On the morning of the day of the accident, the
fence was removed, and its length extended, and it was placed so
as to entirely surround blocks 3, 4 and 5, and the workmen pro-
ceeded to repair blocks 3 and 4, in the same manner that blocks
1 and 2 had been repaired the day before.   Thus the passageway
was closed except over blocks 1 and 2.   It was found that the con-
crete of those blocks was still too soft to permit traveling over
them.   Therefore the workmen placed boards over blocks 1 and 2,
so as to allow a passage over them.   The defendant's witnesses say
they were placed lengthwise of the passageway.   The boards were
five or six feet long.   They were matched sheathing boards, planed
on one side, laid close together, and flat upon the concrete.   The
plaintiff estimated their thickness to be about one inch.   The men
who laid them said they were seven-eighths of an inch thick.   The
passageway remained in the same condition all day long, and all
passengers to and from trains, going through the passageway,
walked over these boards.

The plaintiff arrived that forenoon on a train that was due in
Bangor at 12.05 P. M.   Arriving at the Bangor station, he walked
out through the passageway, over the boards on blocks 1 and 2, to
the street, but he says that he did not notice either the boards, or
the fence around blocks 3, 4 and 5.   Later, about 1 o'clock, as he
says, he returned to the station to take a train to Veazie.   He says
that while going along the passageway a companion called his atten-
tion to the Veazie train, then standing in the train shed, and that
while he was looking at the train for a moment, he stepped with
his right foot onto one, or perhaps two, of the boards, and the end

of one of the boards sprung up so that he caught the toe of the left foot on it, and was tripped and thrown down. His view was unobstructed, but he says he did not see the boards nor the fence around blocks 3, 4 and 5, and that he was not paying attention to where he was stepping. It is not claimed that, at the time of the accident, any workmen were at work on blocks 3 and 4.

The defendant claims that the accident occurred at about five o'clock in the afternoon, instead of 1 o'clock, and it has introduced so much testimony to that effect, documentary and otherwise, as to make it almost conclusive that the plaintiff's recollection on this point, at least, is faulty. Four witnesses, employees of the defendant, testified that the plaintiff's gait before the accident was unsteady, and that his breath had the odor of liquor afterwards. The plaintiff denied that he had drunk any liquor that day. The plaintiff testified that the boards across blocks 1 and 2 were laid "sort of diagonally." This is the whole case so far as material.

The plaintiff was in the passageway for the purpose of taking one of the defendant's trains. The defendant owed him the duty of exercising the care for his safety which a railroad company owes its passengers, while they are upon its platforms or grounds, either going to or coming from trains. Care in the highest degree was not required. The care owed to a passenger in a moving train was not required. It was not required to keep the passageway absolutely safe. Its only duty was to exercise ordinary care to maintain the passageway in question in such a reasonably safe and suitable condition that passengers who were themselves in the exercise of ordinary care could walk over it safely. *Maxfield* v. *Maine Central R. R. Co.,* 100 Maine, 79.

The plaintiff himself was bound to exercise ordinary care. All passengers are. But unlike the passenger on a moving train, he was in a position to use his eyes and guide his steps. He could see and avert danger if it existed. He could by attention protect himself.

Now as touching the alleged negligence of the defendant. It was making necessary repairs. If it chose to work on blocks 3 and 4 before the cement hardened on blocks 1 and 2, so that the plaintiff was obliged to travel over these blocks, the defendant's duty to the plaintiff was to have that passage reasonably safe and convenient

for the plaintiff at the time and under the conditions, when he attempted to cross. What might have been its duty had the plaintiff been one of a crowd, passing over the boards, without reasonable opportunity for observation, is not the question. It is rather what was its duty to him walking alone, or with only one companion, in broad daylight, with a perfect opportunity for observation. Applying this test, we think it cannot reasonably be said that the defendant was negligent towards the plaintiff. The placing of the boards where they were seems unquestionably to have been a proper act. The defendant had a right to assume that the defendant would himself be in the exercise of ordinary care. The barrier around blocks 3, 4 and 5 was a notice to all that repairs were being made, or that something out of the ordinary was being done. That should have attracted the attention of the plaintiff, and had he been attentive and careful, it is hardly possible that he would have failed to notice the boards. All this the defendant had a right to assume. And under the circumstances, we are of opinion that the defendant used reasonable care so far as the plaintiff was concerned.

Moreover, as already indicated, we think the plaintiff was guilty of contributory negligence. We need not repeat the reasons. It may be said, too, that there is much reason for thinking that the plaintiff did notice the barrier around blocks 3, 4 and 5, because to reach the passageway over the boards, he had swerved several feet to the left from the direct course from the point where he left the street to the gate to the train shed.

We are of opinion that the verdict is unmistakably wrong, and should not be allowed to stand.

*Motion sustained.*